UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NIKOLA LJUBISAVELJEVIC,

Plaintiff

v.                                C-1-05-202

NATIONAL CITY CORPORATION,

Defendant

ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 15), plaintiff's objections (doc. no. 17), defendant's response (doc. no. 18) and defendant's supplemental submission of authority (doc. no. 19). The Magistrate Judge recommended that plaintiff's Motion for Judgment (doc. no. 9) should be denied, defendant's Cross Motion for Judgment as a Matter of Law (doc. no. 10) should be granted and this case be terminated on the docket of this Court.

Plaintiff objects to the Judge's Report and Recommendation on the grounds that his findings are contrary to law.

## Report and Recommendation

This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq. ("ERISA"). Plaintiff asserts an ERISA claim for benefits under 29, U.S.C. § 1132(a)(1)(B), arguing that he is entitled to severance benefits in excess of the 60 weeks of payments which he has received. The question presented is whether a Merger Agreement between Provident Financial Group ("Provident") and National City Corporation ("National City") is itself an ERISA plan.

### BACKGROUND

Plaintiff was employed for twelve years by Provident as a Senior Vice President. (AR 0106). On February 16, 2004, Provident and National City entered into an Agreement and Plan of Merger to become effective following regulatory approvals. (AR 0013, AR0019-20). Under the Merger Agreement, National City and Provident agreed that employees of Provident who remained employed after the merger became effective ("Continuing Employees") would receive the greater of the severance benefits available under the Provident severance plan or the applicable National City severance plan if they were terminated within the first year after the effective date. (AR 0047-48). Specifically, § 5.5(e) of the Merger Agreement provides:

> (e) Severance Upon Termination of Continuing Employee. If a Continuing Employee's employment is terminated by National City or any of its Subsidiaries (A) on or prior to the first anniversary of the Effective Time, such Continuing Employee shall be entitled to severance benefits from National City and its Subsidiaries that are not less than the greater of (i) the severance benefits that would have been paid under the severance benefit plan or program of the Company [Provident] or Company Subsidiaries applicable to such Continuing Employee as of the date hereof, and (ii) the severance benefits that would be paid from time to time under the severance benefit plan or program of National City and its Subsidiaries that applies to similarly

3

> situated employees of National City and its Subsidiaries; and (B) after the first anniversary of the Effective Time, such Continuing Employee shall be entitled to severance benefits from National City and its Subsidiaries in accordance with the severance plans and policies of National City and its Subsidiaries, as in effect from time to time thereafter for similarly situated employees.

(AR 0048).

On June 10, 2004, Plaintiff sent a letter to the Provident Bank Severance Plan Administrator stating his belief that a severance benefit plan may exist for senior vice presidents of National City which provided more generous severance benefits. (AR 0102-103). Defendant National City responded that the Provident severance plan provided the greater benefits of the two plans in general and in Plaintiff's particular case. (AR 0104-105). The Plan Administrator of the Provident Plan denied the claim for additional benefits. (AR 0106-107). Plaintiff then signed a Release and Waiver Agreement on July 30, 2004, "in exchange for severance benefits beginning July 31, 2004, under the Provident Financial Group, Inc. Severance Benefits Plan." (AR 0108). The Release provided in pertinent part that Plaintiff released

> any and all rights and claims I may have against Provident Bank arising out of my employment with Provident Bank or the termination of my employment or any circumstances surrounding or statements made in connection with my employment or the termination of my employment.

(Id.). Plaintiff received 60 weeks of pay as severance allowance and retention bonus. (AR 0101). Thereafter, on October 4, 2004, Plaintiff requested an administrative review of the decision of the Plan Administrator denying him additional severance benefits. (AR 0111-113). He argued that the Merger Agreement created a separate employee welfare benefit plan governed by ERISA, under which Plaintiff would be entitled to benefits under the National City Management Severance Plan, applicable

4

in the event of a change in control of National City. On October 29, 2004, Defendant informed Plaintiff that "[t]he Merger Agreement is not itself an ERISA severance plan, rather it merely contains a contractual promise between its parties to provide severance benefits under certain circumstances." (AR 0114-116). Defendant also informed Plaintiff that National City Change of Control Plan benefits were not available to any employees, whether originally National City employees or Continuing Employees from Provident, unless there was a change in control of National City, as defined in the National City Change of Control Plan[1]. Defendant argues that, under the Merger Agreement, Continuing Employees became eligible for National City plans only if still employed after January 1, 2005. (AR 0048). Therefore, Defendant contends, Plaintiff was never covered by, nor eligible for these plans.

## OPINION

As an initial matter, the Court must determine whether the Merger Agreement created a separate and independent ERISA plan as Plaintiff contends. To do this, we "must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *International Resources, Inc. v. New York Life Insurance Company*, 900 F.2d 294, 297 (6th Cir. 1991)(citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).

---

[1] The National City Change of Control Plan awards benefits based on "Base Salary" and "Incentive Pay," as defined by the Plan. It does not provide for a change in control of any entity other than National City. (AR0007, AR 0002-3). "Incentive Pay" is defined by reference to certain National City "Short-Term Plans," and the National City Corporation Long-Term Incentive Plan for Senior Officers. (AR 0004-5).

5

Plaintiff contends that all four elements set forth above have been met through either the Merger Agreement itself or "by reference to the existing and to-be-created plans." Defendant, on the other hand, contends that the Merger Agreement fails to state the amount or nature of the severance benefits to be provided, nor does it provide a procedure whereby a beneficiary may apply for severance benefits.

The portion of the Merger Agreement upon which Plaintiff bases his argument states that continuing employees will receive severance benefits "that are *not less than* the greater of" the benefits payable under Provident's severance plan or National City's severance plan. (AR 0048). Defendant contends that, while the nature of the benefits, that is, severance benefits, to be provided is clear from the Merger Agreement, the amount is not clearly defined. Defendant argues that this provision is amorphous at best and does not allow the reasonable person to ascertain the benefit that a specific employee is intended to receive. *See Williams v. WCI Steel Company, Inc.*, 170 F.3d 598, 603 (6th Cir. 1999). In contrast, Plaintiff argues that setting a minimum benefit is "standard contract terminology" and an ordinary method of defining consideration or benefit. The fact that this language may be standard contract terminology, in our opinion, does not mean that such language satisfies the criteria for determining whether the Merger Agreement is, in fact, a separate ERISA plan. Moreover, Plaintiff's argument on this point supports Defendant's position that the Merger Agreement is merely a contract for the merger of two companies, not an independent ERISA plan. Without consultation to the existing severance plans provided by Provident and National City, the reasonable person is unable to ascertain the benefit that a specific employee is intended to

receive. *Williams,* 170 F.3d at 603(quoting *Siemon v. AT&T Corp.,* 117 F.3d 1173, 1179 (10th Cir. 1997)). We find the court's reasoning in *Richmond v. NCR Corporation,* 227 F.Supp.2d 802 (S.D. Ohio Sept. 13, 2002), to be especially relevant. In *Richmond,* the court found that an informational memorandum regarding a pension enhancement program "could not be interpreted by any reasonable individual as being a source document of a welfare benefit plan." 227 F.Supp.2d at 809(citing *Elmore v. Cone Mills Corp.,* 23 F.3d 855, 861-62 (4th Cir. 1994)(holding that where"[t]he only way an employee could ascertain the procedures for obtaining benefits would be to refer to the [original plan documents]," employees cannot enforce the terms of informal writings as free-standing ERISA plans); *see also Williams,* 170 F.3d at 604(following *Elmore* where an agreement between management and labor provided that funds from a trust account would fund retiree benefits but did not specify how claims would be processed and benefits paid). We find nothing in the Merger Agreement that would aid in our determination of what the specific benefits to an individual employee would be. Such a determination could only be made after reference to either the Provident or National City severance plans.

With respect to claims procedures, the Merger Agreement itself is silent. The fact that Plaintiff questioned his benefit amount under the Provident Plan does not rectify this shortcoming. Plaintiff received severance benefits under the Provident Plan which was explained by the Administrator as being the greater of the benefits available under the Provident Plan and the National City Plan. (AR0104-0105). The Plaintiff questioned the amount of his severance benefits and was told that the Merger Agreement was not itself an ERISA plan and that the National City Change

in Control plan was not available in the absence of a change in control of National City. (AR0114-0116). The fact that this claim procedure was provided under the Provident Plan and that Plaintiff proceeded under such cannot now be considered as evidence that an administrative procedure was set forth under the Merger Agreement because it was easily ascertainable by reference to the Provident Plan. That Plaintiff was "aware of how to follow a claim procedure and did so does not equate to evidence that the such procedures could be ascertained by the reasonable person from "surrounding circumstances" and therefore existed in the Merger Agreement.

The crux of Plaintiff's reasoning with respect to the above arguments appears to be that the mere reference to the Provident and National City plans within the Merger Agreement is somehow sufficient to create a separate ERISA plan. We disagree. While Plaintiff cites this Court to *International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294 (6th Cir. 1991) as support for this argument, we do not find the case to be particularly helpful and find it distinguishable on its facts.[2] The Sixth Circuit, in *International Resources,* found that ERISA plans may be established

---

Moreover, we agree with Defendant's position that the collection of cases to which Plaintiff cites this Court in support of his argument are cases inapposite the facts of the present case. More specifically, these distinguishable cases include: *Deibler v. Local Union 23*, 973 F.2d 206, 209 (3d. Cir. 1992) (union-sponsored plan created and terminated by written union minutes); *Minnis v. Baldwin Bros. Inc.*, 150 Fed.Appx. 118 (3rd Cir. 2005) (statute of limitations barred claim for benefits based on oral promise); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir. 1985) (allegations of employer's oral and written promises and regular practices were sufficient to allege severance plan); *Cvelbar v. CBI Ill.*, 106 F.3d 1368 (7th Cir. 1997) (written severance benefit agreement); *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546 (6th Cir. 1989) (written severance pay guidelines); *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294 (6th Cir. 1991) (health insurance policy).

8

"through the purchase of insurance or otherwise." 950 F.2d at 297. The facts of the present case concern a merger agreement in which the merging companies contractually agreed to provide severance benefits under certain circumstances under the applicable severance plans of the merging companies. Thus, the rationale in *International Resources* is not relevant to the particular factual circumstances of Plaintiff's case. As we stated previously, we find the court's rationale in *Richmond* to be particularly apropos. As Judge Rice reasoned, to find that an independent ERISA plan was created by mere reference to existing plans in another document "would place employers on egg shells whenever they distributed plan updates, proposals, newsletters or bona fide amendments." Judge Rice, therefore concluded that, "[T]he bottom line is that unless [plaintiffs] can demonstrate that the documents on which they rely satisfy the requirements of ERISA plan documents, no separate plan can be recognized." 227 F.Supp.2d at 812. Moreover, Plaintiff's reliance on *Dyce v. Salaried Employees' Pension Plan of Allied Corp.*, in support of his argument that an ERISA plan may be part of a corporate merger plan is misplaced. In *Dyce*, the pension plan was amended through *formal action* "in order to effectuate the intentions of the parties as expressed in the merger agreement." 15 F.3d 163, 164 (11th Cir. 1994). No such formal action was taken in the instant case. ERISA requires that each plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986)(quoting 29 U.S.C. §1102(b)(3)).

9

Indeed, as Defendant correctly points out, decisions from other circuits reflect the point of view that a Merger Agreement in and of itself, is not an ERISA plan. *See Moline Machinery, LTD. v. The Pillsbury Co.,* 259 F.Supp.2d 892, 904 n. 5 (D. Minn. Mar. 25, 2003)(finding that, although the purchase agreement referenced a benefit plan, it did not alter or amend the parties' benefits plans because the purchase agreement did not contain the "trappings" of an ERISA plan, including among other things, an administrative procedure or a table of benefits); *Dwyer v. Galen Hospital Illinois, Inc.,* 94 C 544, 1996 WL 111886 at 10 (N.D.Ill. Mar. 12, 1996)(holding that "informal written document such as purchase agreement cannot legally operate to amend a plan document"); *In re Fairchild Industries, Inc. v. GMF Investments, Inc., ERISA Litigation,* 768 F.Supp. 1528, 1533 (N.D. Fla. Dec. 28, 1990)("Because ERISA prohibits the amendment of an employee benefit plan through informal written documents, or by any other means except as specified in the plan documents themselves pursuant to ERISA, the Purchase Agreement could not legally operate to amend the plan documents").

For the reasons stated above, we find that the Merger Agreement between Provident and National City did not create an independent ERISA plan because it fails to comply with the *Dillingham* criteria by failing to set forth the specific intended benefits and the procedures for receiving such benefits.

10

## Standard of Review

In a denial of benefits action brought under § 1132(a)(1)(B), the district court must base its review of the merits solely upon the underlying administrative record; the district court may not consider any evidence that was not presented to the Plan administrator. *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir. 1998)(Gilman, J., concurring). The Court of Appeals for the Sixth Circuit has therefore determined that summary judgment procedures are inconsistent with the appropriate standard of review for recovery of benefits claims under ERISA. *Id.* Instead of using the summary judgment mechanism, the Court must review the administrative record applying either a *de novo* or an arbitrary and capricious standard of review, as appropriate, and render a decision on the merits by determining whether the denial of benefits was proper under the terms of the Plan. *Id.* at 619-20; *Wright v. Honda of America,* 2002 WL 484633, *4 (S.D. Ohio Feb. 12, 2002)(Sargus, J.); *Smith v. Aetna U.S. Healthcare,* 312 F. Supp.2d 942, 949 ( S.D. Ohio Mar. 29, 2004).

A beneficiary may challenge an ERISA plan administrator's decision to deny benefits under 29 U.S.C. § 1132(a)(1)(B). When a beneficiary raises such a challenge, the district court must review the administrator's decision under a *de novo* standard, unless "the benefit plan in question gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Where the plan grants discretionary authority to the administrator, the Court must apply the highly deferential arbitrary and capricious standard to its review of the benefits decision. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d

11

376, 380 (6th Cir. 1996). While the plan need not include "magic words" such as the term "discretionary" or some other specific terminology, in order to vest the plan administrator with discretion, the grant of discretionary authority must be "clear" in order to trigger the arbitrary and capricious standard of review. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998)(*en banc*).

Under an arbitrary and capricious standard, the Court must affirm the administrator's decision if the record evidence establishes a reasonable basis for the decision. *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693-94 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990). Under the *de novo* standard of review, however, the Court must consider "the proper interpretation of the plan and whether an employee is entitled to benefits under it" based solely on the record that was before the administrator. *Perry v. Simplicity Engineering*, 900 F.2d 963, 966-67 (6th Cir. 1990). *See also Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir. 1996); *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1372 (6th Cir. 1994). *De novo* review simply means a determination "whether or not the Court agrees with the administrative decision based on the record that was before the administrator." *Id.*

Plaintiff argues that de novo review is the appropriate standard of review as "the plan created by § 5.5(e) of the Merger Agreement" contains no clear grant of discretion to the Plan administrator. Defendant, in contrast, argues that there was no independent ERISA plan created by § 5.5(e) of the Merger Agreement and that each of the existing Provident and National City plans at issue contains a clear grant of discretionary authority to the Plan Administrator.

12

The Provident Plan provides in pertinent part that,

> The Plan Administrator has the sole responsibility for the administration of the Plan; and the Plan Administrator has the exclusive right to interpret the provisions of the Plan and to determine any questions arising hereunder including, without limitation, the power to determine who is eligible for benefits hereunder and the power to determine the amount of any benefits payable to any person hereunder, and its decision or action in respect thereof will be conclusive and binding.

(AR 0095).

Pursuant to the National City Plan, "[T]he Committee shall have such duties and powers . . . including, without limitation, . . .[t]o construe and interpret this Plan and to decide all questions of eligibility . . . To the extent permitted by law the Plan Administrator's decision shall be final and binding upon all parties." (AR 0077, AR0079).

Finally, the National City Change in Control Plan provides that, "[T]he Committee shall have full power and authority to interpret, construe and administer this Plan and its interpretations and construction . . . shall be binding and conclusive on all persons for all purposes." (AR 0011).

Plaintiff's argument that we should apply a *de novo* standard of review is based on the premise that the Merger Agreement is a separate ERISA plan. Because we found that the Merger Agreement does not constitute a separate ERISA plan, *see supra* pp. 3-7, we find that Plaintiff has failed to establish that Defendant is not entitled to deferential review. Here, the evidence shows that, as Plan Administrator, Defendant had the discretion and authority to determine all questions of eligibility as well as to determine the amounts of any benefits payable. We, therefore, find that Defendant's decision should reviewed under the arbitrary and capricious

13

standard. Thus, the Court should apply the highly deferential arbitrary and capricious standard to its review of the benefits decision. *See Firestone*, 489 U.S. at 115; *Yeager*, 88 F.3d at 380.

### Defendant's Decision to Deny Plaintiff's Request for Additional Benefits was Reasonable

In the present case, we find that Plaintiff's claim involves a basic contract dispute, which is clearly preempted by ERISA. *See Reedstrom v. Nova Chemicals, Inc.*, 96 Fed.Appx. 331, *334, 2004 WL 886949, **3 (6th Cir. 2004) (stating that ERISA preempts state laws, including common law contract claims, to the extent they "relate to any employee benefit plan" as defined by the statute, 29 U.S.C. § 1144(a)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (state common law actions are preempted by ERISA if they relate to employee benefit plans). Where the purpose of a claim is to recover an ERISA plan benefit, such claim is completely preempted by ERISA. *International Resources, Inc.*, 950 F.2d at 298.

Plaintiff contends that he is entitled to additional benefits under National City's Change of Control Plan. Defendant argues that the Change of Control Plan is inapplicable to Plaintiff and that Plaintiff received the appropriate severance benefits under the Provident Plan, the plan which afforded Plaintiff the most favorable benefits.

Section 5.5(e) of the Merger Agreement provides that employees laid off in the first year after the National City/Provident merger are entitled to benefits not less than the greater of the benefits payable under Provident's severance plan or National City's plan. Plaintiff argues that the National City Change of Control Plan

14

applies to him because the language of § 5.5(e) of the Merger Agreement is subjunctive. The specific language to which Plaintiff refers is that "the severance benefits that would be paid from time to time under the severance benefit plan or program of National City and its Subsidiaries." However, Plaintiff fails to explain to this Court how such language negates the subsequent qualifying language of that section. Specifically, § 5.5(e)(A) states that

> . . . such Continuing Employee shall be entitled to severance benefits from National City and its Subsidiaries that are not less than the greater of (i) the severance benefits that would have been paid under the severance benefit plan or program of the Company [Provident] or Company Subsidiaries applicable to such Continuing Employee as of the date hereof, and (ii) the severance benefits that would be paid from time to time under the severance benefit plan or program of National City and its Subsidiaries *that applies to similarly situated employees of National City and its Subsidiaries.*

(AR 0048, emphasis added). As outlined above, the National City Change of Control Plan awards benefits based on "Base Salary" and "Incentive Pay," as defined by the Plan. It does not provide for a change in control of any entity other than National City. (AR0007, AR 0002-3). "Incentive Pay" is defined by reference to certain National City "Short-Term Plans," and the National City Corporation Long-Term Incentive Plan for Senior Officers. (AR 0004-5). The Short Term Plans include National City Corporation Short Term Incentive Compensation Plan for Senior Officers, the National City Corporation Annual Corporate Performance Incentive Plan, the National City Corporation Management Incentive Plan for Senior Officers and predecessor and successor plans. (AR0005). Moreover, § 5.5(c) of the Merger Agreement provided that Continuing Employees became eligible to participate in National City plans only after January 1, 2005. (AR00048). Thus, even ignoring the clear fact that Plaintiff has failed to show that there has been a change in control

15

of National City, Plaintiff cannot show that he is similarly situated to employees of National City such that he would be entitled to benefits under the National City Change of Control Plan. Because Plaintiff's employment ended prior to January 1, 2005, he never participated in any of the National City incentive plans. Thus, the formula for calculating such benefits cannot be applied to him.

Plaintiff's argument for entitlement to the National City Change of Control Plan is a strained one. Defendant argues that, in order to give credence to Plaintiff's argument this Court would have to supply terms that are absent from the plan itself. We agree. The language of the Merger Agreement is clear in that Plaintiff's eligibility under the National City Change of Control Plan is contingent upon the applicability of that plan to him and his being similarly situated to such employees of National City. Because there was no change in control of National City, the Plan was not applicable to Plaintiff nor to any other National City employee. Additionally, because Plaintiff had not participated in any National City incentive plans, he cannot be considered to be similarly situated to the National City employees who had. As discussed above, under the arbitrary and capricious standard, the Court must affirm the administrator's decision if the record evidence establishes a reasonable basis for the decision. *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693-94 (6th Cir. 1989), *cert denied*, 495 U.S. 905 (1990). We find that Defendant's decision to award benefits to Plaintiff under the Provident Severance Plan as opposed to the National City Change of Control Plan is supported by the record evidence and was, therefore, reasonable.

16

Lastly, Defendant argues that Plaintiff's claims are barred pursuant to the Release and Waiver Agreement which he signed in exchange for receiving severance benefits under the Provident Plan. (AR00108). Plaintiff contends that the specific wording of the release provides for an exception for "any rights that [Plaintiff] may have under the Provident Bank benefit plans." Plaintiff argues that because, the Merger Agreement created a Provident Bank benefit plan, the plan set up by that Agreement is expressly excluded from the release. Based on the Court's conclusion that the Merger Agreement did not, in fact, create a separate ERISA plan, Plaintiff's argument fails. While the Release excludes Provident Bank benefit plans, the Merger Agreement is not such a plan and is not covered under the exception. Thus, to the extent Plaintiff is asserting claims regarding the terms of the Merger Agreement, he is barred from doing so pursuant to the terms of his Release. *See Haller v. Borror Corp.*, 552, N.E.2d 207 (1990).

## CONCLUSION

Upon a *de novo* review of the reco rd, especially in light of plaintiff's objections, the Court finds that plaintiff's objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court. The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.

Accordingly, the Court hereby ADOPTS the Report and Recommendation of the United States Magistrate Judge (doc. no. 15).

17

Plaintiff's Motion for Judgment (doc. no. 9) is hereby DENIED and Defendant's Cross Motion for Judgment as a Matter of Law (doc. no. 10) is GRANTED.

This case is DISMISSED at plaintiff's cost and TERMINATED upon the Court's Docket.

IT IS SO ORDERED.

_____
Herman J. Weber, Senior Judge
United States District Court

J:\DOCUMENT\PRISONER\05-202 R&R on MSJ.wpd